# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RONZIL WILLIAMS,**
**Claimant Below, Petitioner**

**FILED**
**June 30, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**v.) No. 26-ICA-30**        (JCN: 2024013526)

**T.S. ELLIOTT CONTRACTING, LLC,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Ronzil Williams appeals the December 22, 2025, order of the Workers' Compensation Board of Review ("Board"). Respondent T.S. Elliott Contracting, LLC, ("T.S. Elliott") timely filed a response.[1] Mr. Williams filed a reply. The issue on appeal is whether the Board erred in affirming the claim administrator's order, which denied authorization for a left reverse shoulder arthroplasty.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

Mr. Williams presented to WVU Medicine Wheeling Hospital on January 24, 2024, and reported left shoulder pain after he felt a pop in his left shoulder while hanging drywall at work the previous Tuesday. Upon examination, Mr. Williams had severely limited active and passive range of motion of the left shoulder. Mr. Williams indicated that he previously had a tendon rupture in that shoulder with a repair approximately thirty years ago. Chad Anderson, M.D., diagnosed left shoulder subluxation.

Mr. Williams, a laborer, completed an Employees' and Physicians' Report of Occupational Injury or Disease form dated February 6, 2024. Mr. Williams indicated that he injured his left shoulder while hanging drywall above his head, when his shoulder popped out of socket. William Przybysz, M.D., completed the physicians' portion of the form dated February 6, 2024. Dr. Przybysz stated that Mr. Williams injured his left shoulder as a result of an occupational injury and described the injury as a left shoulder

---

[1] Mr. Williams is represented by Sandra K. Law, Esq. T.S. Elliott is represented by Steven K. Wellman, Esq., and James W. Heslep, Esq.

1

dislocation/subluxation. Further, Dr. Przybysz indicated that Mr. Williams' injury aggravated a prior left shoulder surgery.

On February 29, 2024, Mr. Williams underwent an MRI of his left shoulder, which revealed advanced glenohumeral osteoarthrosis with bony remodeling and edema along the posterior inferior joint space; tendinopathy of the proximal extra-articular long head of the biceps tendon; and mild supraspinatus tendinopathy without significant rotator cuff tearing. Mr. Williams followed up with Dr. Przybysz regarding his MRI on March 4, 2024, and reported that his left shoulder pain was constant. Dr. Przybysz assessed left biceps tendinopathy; left supraspinatus tendinitis; and left glenohumeral arthritis.

Mr. Williams began treatment with Dante Marra, M.D., on March 22, 2024, regarding an injury to his left shoulder that occurred about two months prior. Dr. Marra noted that Mr. Williams was lifting some drywall overhead when he felt a sharp pain and pop in his left shoulder. Since this time, he has had significant pain. The assessment was left shoulder degenerative joint disease with acute sprain. Dr. Marra recommended restrictions on kneeling, twisting, driving, reaching, bending, and climbing. Dr. Marra recommended a left reverse shoulder arthroplasty and a CT scan.

Dr. Przybysz signed an additional Attending Physician's Report dated April 4, 2024. He noted that Mr. Williams attended an appointment with Dr. Marra on March 22, 2024. Dr. Przybysz planned to have additional imaging done and possibly surgery. Mr. Williams was instructed to remain off work until the imaging was reviewed by an orthopedist.

Mr. Williams underwent a CT of his left shoulder on May 13, 2024. The impression was osteoarthritic degenerative changes involving the left glenohumeral joint, a somewhat high riding of the left humeral head which can be seen with rotator cuff degeneration, and the supraspinatus muscle and tendon appeared grossly intact.

On May 20, 2024, Mr. Williams followed up with Dr. Marra and reported continual left shoulder pain. The CT showed essentially intact but slightly biconcave glenoid with severe degenerative changes, significant posterior glenohumeral subluxation, rotator cuff deficiency arthropathy, and shoulder destruction with severe joint space narrowing and cystic changes. Because of the severity of Mr. Williams' disease and limitations in activities of daily living, Dr. Marra planned for a left reverse shoulder arthroplasty.

On May 30, 2024, James Dauphin, M.D., completed a physician review regarding the medical necessity of a left shoulder reverse arthroplasty in Mr. Williams' claim. Dr. Dauphin recommended that the left shoulder reverse arthroplasty not be approved in accordance with West Virginia Code of State Rules § 85-20-21. Dr. Dauphin agreed with Dr. Marra that a reverse total shoulder replacement is the only viable option for Mr. Williams. However, he stated that there was no relation between this procedure and Mr. Williams' occupational injury. Dr. Dauphin said that it is likely that Mr. Williams

2

developed shoulder pain while putting up drywall because he already had a degenerated shoulder from an old cuff tear, which is confirmed by his MRI and CT. Dr. Dauphin found that Mr. Williams' symptoms were related to preexisting disease.

Kelly Agnew, M.D., completed an IME of Mr. Williams dated July 31, 2024. Dr. Agnew assessed a history of prior left shoulder injury and two surgeries with severe glenohumeral degeneration on the left, and shoulder strain from a worksite injury of January 16, 2024, with no evidence of structural damage by imaging studies, which he said was now at MMI. Regarding treatment, Dr. Agnew stated that Mr. Williams' severe degenerative changes are a preexisting condition, and treatment could include injection therapies or arthroplasty. However, Dr. Agnew indicated that any treatment of the underlying degeneration bears no relationship to any structural damage from the January 16, 2024, injury, and that any such treatment would be directed at a preexisting severe osteoarthritic condition.

Mr. Williams followed up with Dr. Marra on August 9, 2024, nearly seven months after his left shoulder injury. Mr. Williams reported that he continued to have pain. X-rays of his left shoulder showed severe degenerative changes of the left glenohumeral joint. Dr. Marra indicated that he was awaiting the IME report so that he could proceed with the left shoulder arthroplasty.

On September 25, 2024, the claim administrator denied authorization for a left reverse shoulder arthroplasty based on Dr. Dauphin's medical review, the MRI, the CT, Dr. Agnew's report, and Chapter 85, Rule 20 of the West Virginia Code of State Rules. Mr. Williams protested this order to the Board.

On March 13, 2025, Mr. Williams gave a deposition and testified that he did not have any problems with his left shoulder while working for T.S. Elliott prior to the compensable injury. Mr. Williams recalled that on January 16, 2024, he was at a house hanging drywall on a twelve-foot ceiling, and when shifting the drywall over his head, his left shoulder popped out of place. He popped it back into place and continued to work the rest of the day. He went to Dr. Przybysz, his family doctor, who directed him to file a workers' compensation claim and go to the hospital for x-rays. Mr. Williams testified that Dr. Marra reviewed his MRI and CT and recommended a total shoulder replacement. He said that the pain is dull when sitting, but that any activity causes a sharp pain that radiates down to the elbow. Mr. Williams recalled that fifty or sixty years ago, when he was fifteen, he wrecked a bike and had trouble with his shoulder popping out of place. Later, when he was thirty-nine years old, he was trimming trees when he threw a rope and his shoulder popped out of place. He had to go to the hospital for treatment. Mr. Williams testified that after this incident, he had no issues with his left shoulder until January 16, 2024.

Charles Werntz III, D.O., evaluated Mr. Williams on July 9, 2025. He opined that Mr. Williams had reached maximum medical improvement for the sprain/strain injury. Dr.

Werntz said that it would not be appropriate to attribute all of the claimant's current impairment to the specific incident in this claim. In Dr. Werntz's opinion, there is a considerable contribution from Mr. Williams' degenerative changes, which were exacerbated by the incident in this claim. Dr. Werntz opined that approximately 75% of Mr. Williams' current impairment is due to the chronic degenerative changes identified on imaging, and 25% is due to the acute incident in this claim.

By order dated December 22, 2025, the Board affirmed the claim administrator's order, which denied the request for a left reverse shoulder arthropathy. The Board found that a left reverse shoulder arthroplasty is not medically necessary and reasonably required treatment for the compensable condition in the claim. It is from this order that Mr. Williams now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
>
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Syl. Pt. 2, *Duff v. Kanawha Cnty. Comm'n*, 250 W. Va. 510, 905 S.E.2d 528 (2024).

On appeal, Mr. Williams argues that the Board erred in failing to apply *Moore v. ICG Tygart Valley*, 247 W. Va. 292, 879 S.E.2d 779 (2022). Mr. Williams asserts that he has worked in labor positions for decades without any treatment for his shoulder, and that it had been thirty-nine years since he was treated for his shoulder prior to his work injury. We disagree.

The claim administrator must provide a claimant with medically related and reasonably necessary treatment for a compensable injury. *See* West Virginia Code § 23-4-3 (2005) and West Virginia Code of State Rules § 85-20-9.1 (2006). Here, the Board found

4

that Mr. Williams has a history of prior injuries to his left shoulder, which required two surgical procedures. The Board noted that the claim is only compensable for left shoulder dislocation. Dr. Marra requested the left reverse shoulder arthroplasty for severe degenerative joint disease with acute sprain, a condition that is not compensable in the claim. Based on the foregoing, the Board concluded that the record does not support a finding that a left reverse shoulder arthroplasty is medically necessary and reasonably required treatment for the compensable injury.

Although Mr. Williams asserts that the Board erred in failing to apply *Moore*, 247 W. Va. 292, 879 S.E.2d 779, we note that the holding in *Moore* applies to the compensability determination of a claim, not authorizations for reasonable and necessary medical treatment. *See Caldwell v. Health Team Critical Care Transport, LLC*, No. 24-ICA-345, 2025 WL 899652 (W. Va. Ct. App. Mar. 24, 2025) (memorandum decision). The issue properly before this court in the instant claim is treatment authorization for a left reverse shoulder arthroplasty. Therefore, we decline to address any arguments related to the holding in *Moore* as they are not relevant to our analysis.

As set forth by the Supreme Court of Appeals of West Virginia, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). With this deferential standard of review in mind, we cannot conclude that the Board was clearly wrong in affirming the claim administrator's order, which rejected authorization for a left shoulder reverse arthroplasty. We note, as did the Board, that the claimant is not precluded from submitting another request for treatment if an additional diagnosis is added as a compensable component in the claim.

Accordingly, we affirm the Board's December 22, 2025, order.

Affirmed.

**ISSUED:** June 30, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White

5